IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JAMES STRITTMATTER | § | |
| | § | |
| V. | § | NO. 1:04-CV-786 |
| | § | |
| BIRON BRISCOE | § | |

MEMORANDUM OPINION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This opinion addresses defendant's motion for summary judgment on the basis of qualified immunity.

I. PARTIES & NATURE OF SUIT

This action involves civil rights claims brought *pro se* by a former Texas parolee against his former supervising parole officer. Plaintiff, James Strittmatter ("Strittmatter"), is a resident of Houston, Texas. Defendant, Biron Briscoe ("Briscoe"), is a parole officer assigned to the Beaumont, Texas, parole office. Briscoe is represented by the Attorney General of Texas, and specifically by Assistant Attorney General, Kimberly Fuchs, Esq.

Strittmatter alleges that Briscoe violated Strittmatter's Fourth, Eighth, and Fourteenth Amendment rights by not being available at night and on a weekend to

authorize Strittmatter to leave his home for emergency medical care. Strittmatter contends that as a result of Briscoe's omission, he was falsely arrested, falsely imprisoned for three days, and subjected to conditions of confinement constituting cruel and unusual punishment.

## II. Procedural History

Because Strittmatter is a layman, the court convened a status conference on January 26, 2006, which Strittmatter attended in person. In addition to responding to routine screening questions, the court allowed Strittmatter to clarify and amplify his allegations through sworn testimony. See Spears v. McCotter, 766 F.2d 179, 181-82 (5th Cir. 1985). Based thereon, and also the written pleadings, the court perceives Strittmatter's factual allegations to be generally as follows:

Strittmatter alleges that in September, 2004, he was on parole in the Texas Department of Criminal Justice's ("TDCJ") "Super Intensive Supervision Program." As a condition of parole, he was required to wear an electronic monitoring bracelet, and remain in his home unless authorized to leave by Briscoe, his parole officer. Strittmatter alleges that calling Briscoe's cell phone was the only way to reach Briscoe, and that there was no one else who could grant permission for him to leave his home.

On a September Saturday, 2004, (Strittmatter cannot recall the exact date) Strittmatter slipped in his tub at home and injured his knee. He felt that he needed emergency medical attention, as his knee was in pain, and beginning to swell. He placed three calls to Briscoe's cell phone. Briscoe did not answer, and each time Strittmatter left a message regarding his need to seek emergency medical care. Strittmatter alleges that Briscoe did not return any of his calls, so after waiting an hour and a half, and still in pain, he went to the Memorial Hermann Baptist Hospital's emergency room without Briscoe's prior authorization.

Strittmatter alleges that he received medical care at the hospital. His leg was immobilized, and he was given pain medication. Strittmatter then returned straight home.

Around 5:00 a.m. the next morning (a Sunday), Strittmatter was arrested by Beaumont police officers executing a parole violation "blue warrant." Strittmatter alleges that the warrant was issued because an electronic monitoring company in Austin, Texas, noted that he had left his home without permission the day before. Strittmatter was taken to jail and placed in solitary confinement.

Plaintiff alleges that while in custody, he was denied access to his regular medications for high blood pressure, rheumatoid arthritis, and diabetes. He also was denied access to pain mediation for his injured knee. Strittmatter alleges that the bed

in his cell was a mere eight inches off the floor which, combined with his knee injury and a herniated disc in his lower spine, made it very difficult and painful to move to and from the bed.

Briscoe would have known of Strittmatter's medical emergency, and of his arrest once he checked his cell phone voice mail, which presumably was at least by the following Monday when the work week began.[1]  However, he did not visit the jail or otherwise contact Strittmatter until the following Tuesday.  At that point, Briscoe arranged for Strittmatter's release and offered Strittmatter a ride home, an offer Strittmatter accepted.  Strittmatter asked Briscoe why it had taken so long to get released, and Briscoe replied that it was because he could not find Strittmatter's paperwork.

## II.  Defendant's Motion

Briscoe seeks summary judgment on the basis of qualified immunity.  Briscoe argues that as a state official, he is entitled to qualified immunity unless plaintiff can overcome this defense.  Briscoe alleges that plaintiff has not stated a valid claim for a

---

[1] Even if Strittmatter himself did not leave any voice mail message, Briscoe presumably received an internal message from the TDCJ warrant officer who authorized Strittmatter's arrest warrant.  See Texas Department of Criminal Justice, Administrative Directive PD/AD-4.1.3, July 26, 2006 (available at www.tdcj.state.tx.us/policy/parole/parole-policies.htm) (providing that after the warrants administrator issues the warrant, he will "notify the . . . supervising officer").

violation of any constitutional right, because plaintiff has not alleged or presented evidence of Briscoe's involvement in plaintiff's arrest, imprisonment, or treatment at the jail.  Further, Briscoe argues that even if Strittmatter's federal rights were violated, he has not alleged or shown that Briscoe's actions were objectively unreasonable.

In support, Briscoe submits a sworn affidavit wherein he states that he was off-duty when Strittmatter's accident occurred, and that he was not required to "be available to [Strittmatter] 24 hours a day, 7 days a week."  Briscoe also states that when he learned that Strittmatter was in jail, he worked immediately to have him released.  Specifically, Briscoe's affidavit states "I took steps to have the warrant withdrawn immediately upon receiving his messages."

### IV.  PRINCIPLES OF ANALYSIS

Two fundamental legal principles govern Briscoe's motion.  The first pertains to the requirements for a valid cause of action under Title 42, United States Code, Section 1983.  The second relates to the common law doctrine of qualified immunity which can shield a public official from suit and liability even when a valid Section 1983 claim is alleged.  The two principles are somewhat entwined.

**A.      Section 1983**

Title 42 U.S.C. § 1983 authorizes a private cause of action against any person who, under color of state law, causes another to be deprived of a federally-protected right.[2] Section 1983 was promulgated to prevent "[a government officials's] [m]isuse of power, possessed by virtue of state law and made possible only because the [official] is clothed with the authority of state law." See Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986); Whitley v. Albers, 475 U.S. 312 (1986) (8th Amendment); Davidson v. Cannon, 474 U.S. 344 (1986) (Fourteenth Amendment); Daniels v. Williams, 474 U.S. 327 (1986) (Fourteenth Amendment). Two allegations are required in order to state a cause of action under Section 1983. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635 (1980); Manax v. McNamara, 842 F.2d 808, 812 (5th Cir. 1988).

---

[2]     Section 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

The first element of a Section 1983 cause of action requires proof of *personal involvement* by the individual sued.  See Board of County Commr's of Bryan County v. Brown, 520 U.S. 397 (1997) (citing Monell v. Dept. of Social Servs. Of City of New York, 436 U.S. 658 (1978)).  The personal involvement requirement produces several rules that distinguish a Section 1983 action from an ordinary tort case.  For example, Section 1983 liability cannot be premised on the doctrine of *respondeat superior*.  Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).  Nor can Section 1983 liability generally be imposed for deficient training or supervision.[3]  Id.  Finally, Section 1983 liability cannot be imposed based on ordinary negligence.  Daniels v. Williams, 474 U.S. 327 (1986).  "[T]he due process clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty, or property."  Id. at 328; Martin v. Dallas County, 822 F.2d 553, 555 (5th Cir. 1987).  Similarly, claims involving "seizures" in violation of the Fourth Amendment must be demonstrated by intentional or willful conduct.  Brower v. County of Inyo, 489 U.S. 593, 596 (1989).  Thus, Section 1983 does not grant a cause of action for every wrongful action taken by a state official.  Whitley, 475 U.S. at 319.

---

[3] Section 1983 liability for failure to train or supervise requires a showing that the official: 1) failed to train or supervise the officer involved, 2) a causal connection between the alleged failure to train or supervise and the constitutional violation, and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  See Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001).

**B.     Qualified Immunity**

The doctrine of qualified immunity protects public officials from liability and suit – *even when their conduct violates federally-protected rights* – if their actions were objectively reasonable in reference to clearly-established law.  See Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Davis v. Scherer, 468 U.S. 183, 190 (1984).  The qualified immunity doctrine reconciles two competing interests:

> One interest is the compensation of persons whose federally protected rights have been violated.  Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties.  Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."

Malley v. Briggs, 475 U.S. 335, 341 (1986).

When public officials assert qualified immunity, it is the court's duty to evaluate the merits of this affirmative defense as a threshold matter, and it is plaintiff's burden to negate such a defense.  See Felton v. Polles, 315 F.3d 470, 477 (5th Cir. 2002);  Wicks v. Mississippi State Employment Servs., 41 F.3d 991, 995 n. 10 (5th Cir. 1995).  Qualified immunity analysis is a two-step process: (1) the court must determine whether plaintiff alleges a violation of a clearly-established right and (2) if so, the court must decide whether the officials' alleged conduct was objectively reasonable in light of clearly-established law at the time of the incident.  See Siegert v. Gilley, 500 U.S. 226, 231-32 (1991); Felton, 315 F.3d at 477.  As for the latter

issue, "[t]he touchstone of this inquiry is whether a reasonable person would have believed his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."  Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).  If either inquiry results in a negative answer, the defendant is entitled to qualified immunity.  See Siegert, 500 U.S. at 231.

### V. ANALYSIS

**A.   Introductory Comment**

The alleged facts in this case may expose a serious problem with TDCJ's Super Intensive Supervision Program.  TDCJ reported that in 2005 it had over 76,000 individuals under some form of supervision, and over 1,300 of those were involved in the Super Intensive Supervision Program.  See Texas Board of Pardons and Paroles, Annual Report 2005.[4]  In a group that large, it is inevitable that some individuals will experience medical and other legitimate emergencies, after hours and on weekends, that necessitate urgent travel or other conduct that ostensibly violates the conditions of their supervision.  If, as a matter of official policy, the only person who can authorize a parolee to respond appropriately to an emergency is the supervising officer, and if that officer simply can go "off duty" for an entire weekend without

---

[4]   Available at www.tdcj.state.tx.us/bpp/publications/publications.html

providing persons under his supervision with an alternative contact, that policy is constitutionally suspect, if not self-evidently infirm.

The tone of the motion and brief submitted by Briscoe's counsel borders on callousness. It insinuates that Strittmatter is just another offender, and his arrest and detention for three days is of no or minimal consequence. For that reason alone, the court has considered construing Strittmatter's complaint as one against TDCJ for declaratory and injunctive relief from an unconstitutional policy requiring parolees facing emergencies to violate conditions of parole during non-business hours. However, as Strittmatter is no longer on parole, he lacks standing to seek such relief. Thus, the court declines to read his complaint that broadly.

B.     **Strittmatter Fails to Allege Violation of a Constitutional Right by Briscoe**

Strittmatter's original arrest, while unfortunate to the extreme, was not unlawful. Strittmatter literally violated terms of his parole when he left his home without permission, whether or not he had good reason. In any event, Briscoe was not personally involved. Briscoe was not on duty at the time; he was not required to

be on duty; and he did not issue the warrant or make the decision to issue the warrant.[5]

Likewise, Briscoe was not responsible for the conditions of Strittmatter's jail confinement. As noted above, Briscoe cannot be liable vicariously for any constitutional violations resulting from jail staff refusing Strittmatter his medication, or otherwise creating cruel conditions of confinement. In other words, Briscoe again had no personal involvement in this alleged unconstitutional.

Finally, Strittmatter's allegations that Briscoe failed to withdraw the "blue warrant" until Tuesday may raise an issue that Briscoe was negligent. However, Strittmatter does not controvert Briscoe's sworn assertions that he began to work immediately to secure Strittmatter's release, or that delay was attributable to an innocent loss of Strittmatter's file. Section 1983 liability requires a showing of more than negligence.

---

[5] For individuals being electronically monitored, as Strittmatter was, the TDCJ Parole Division issues administrative directives regarding the processing of violations of release after hours. See Texas Department of Criminal Justice, Administrative Directive PD/AD-4.1.3, July 26, 2006. According to these directives, for violations that occur "extraneous to normal business hours," a "warrants administrator" first attempts to contact the offender. Id. at III. A. If the administrator is unable to contact the offender, the administrator "shall issue a warrant and notify the . . . supervising officer . . . of the warrant issuance decision." Id.

In sum, Strittmatter is unable to satisfy the first element of a Section 1983 cause of action against Briscoe. He fails to show that Briscoe personally engaged in any act or omission that allegedly violated any constitutional right.

C.   **Strittmatter Fails to Allege or Show Objectively Unreasonable Conduct**

Underlying all of Strittmatter's claims is an implicit allegation that Briscoe was derelict in his duty by turning off his cell phone for the weekend so as to not be bothered by or available to parolees under his supervision. Even if this assumption is accurate, no one reasonably can expect each individual public official to be on duty at all times. However, because Strittmatter was under supervision at all times, it was not unreasonable for him to expect that Briscoe or *someone* would be available at all times to provide guidance and instructions in the case of emergencies. A parolee who suffers a heart attack or a miscarriage has no choice but to address those life threatening circumstances immediately. If TDCJ provides no mechanism for them to do so responsibly, the parolee must act at the peril of soon being hauled off to jail on some computer-generated arrest warrant. How that would pass constitutional muster is a mystery.

But assuming *arguendo* that Briscoe were remiss, even to an unconstitutional extent, he still would be entitled to dismissal based on the doctrine of qualified immunity. Strittmatter does not allege or show, and the court's independent research

does not reveal any basis for concluding, that a reasonable parole officer would have known that his conduct did not conform to constitutional standards in light of the information available to him and the clearly established law.

It is not enough to show that right exists generally, e.g., the right to be free from cruel and unusual punishment.  Instead, specific "contours" of the right must be clearly established.  See Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").  This is not to say that officials are liable only for violations for which there is express precedent.  See Hope v. Pelzer, 536 U.S. 730, 741-42 (2002) (stating that a violation maybe "so obvious," that existing general precedent gives the fair warning).  While some violations are so obvious as to require no on-point precedent to give officials fair warning, the violation in this case is not that clear.  There is nothing to suggest that an individual parole officer violates a parolee's federal rights by going home and off duty at the end of a work week.  Neither is there a clearly established right to have the individual supervising parole officer available at all times.

## V.  Conclusion

For reasons stated above, Briscoe's motion for summary judgment on the basis of qualified immunity will be granted by separate order.

Over two decades of judicial experience teach the undersigned that almost always there are two sides to a dispute. Since there will be no trial, the court will not hear all of the evidence, and particularly Officer Briscoe's version of the events. But if all salient facts are presently before the court, exoneration of Briscoe on the basis of immunity is not a perfect resolution. It doesn't equilibrate the fact that Strittmatter endured three days in solitary confinement, while injured and suffering from other chronic ailments, without necessary medications or other appropriate accommodations, on a technical violation committed only because he unforeseeably became *in extremis*. While, as a legal matter, Strittmatter is not entitled to monetary compensation, some expression of regret appears due to him as a moral matter. Apologies, however, are not remedies that courts can order, and if they were, they would be of little consequence.

SIGNED this __11__ day of July, 2007.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge